ERIC GRANT
United States Attorney
AUDREY B. HEMESATH
MATTHEW THUESEN
SAM STEFANKI
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHAHRIAR “SEAN” LOLOEE,<br><br>Defendant. | CASE NO. 2:23-CR-00320-TLN<br><br>UNITED STATES’ OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT<br><br>DATE: November 19, 2026<br>TIME: 9:30 a.m.<br>COURT: Hon. Troy L. Nunley |

Defendant Shahriar “Sean” Loloee is set to appear before the Court for judgment and sentencing this month after pleading guilty to wire fraud, conspiracy to obstruct federal investigations, money laundering, and other offenses. In advance of sentencing, the United States of America submits two objections to the presentence investigation report (the “PSR”) prepared in relation to Loloee. First, the government objects to the PSR’s calculation of Loloee’s offense level for laundering millions of dollars he fraudulently obtained from the Restaurant Revitalization Fund during the height of the COVID-19 pandemic. Second, the government objects to Loloee receiving an offense level reduction for acceptance of responsibility.

## I. MONEY LAUNDERING CALCULATION

The Court should amend the PSR so that the adjusted offense level for Loloee’s money laundering conviction is 27, not 26. *See* PSR ¶¶ 93–108, Dkt. No. 245. Sustaining this objection will

ensure that the PSR appropriately accounts for the fact that Loloee pleaded guilty to the underlying wire fraud offense from which he derived millions of dollars that he subsequently laundered.

### A. Factual and Procedural Background

Loloee stands convicted of one count of wire fraud and one count of laundering the proceeds of that wire fraud (among other crimes). *See* PSR ¶¶ 1, 100. The PSR calculates that Loloee's base offense level for his wire fraud conviction is 7 because that "offense was specifically referenced to this guideline and has a statutory maximum of 20 years imprisonment." PSR ¶ 93.

The PSR also concludes that Loloee's money laundering conviction controls his overall guideline range, but that the offense level calculation for that money laundering begins with a base offense level of 6 (rather than 7). PSR ¶¶ 100–08. Specifically, the PSR states that "the base offense level [for Loloee's money laundering conviction] is 6 as the conviction used to determine the base offense level was not specifically referenced to this guideline under Appendix A." PSR ¶ 100. The PSR declines to incorporate the government's informal objection to this calculation, on grounds that "Money Laundering is not referenced to guideline §2B1.1." PSR at *56.

### B. Legal Framework

The base offense level for money laundering is generally the same as the offense level for the underlying crime from which the defendant derived the funds he laundered. U.S. Sent'g Guidelines Manual § 2S1.1(a)(1) (U.S. Sent'g Comm'n 2026) [hereinafter "U.S.S.G." or the "Guidelines"]. Where the guideline for the underlying offense is § 2B1.1, two things must be true for the laundering conviction's base offense level to be 7. First, the defendant must have been "convicted of an offense referenced to" § 2B1.1. *Id.* § 2B1.1(a)(1). Second, that underlying referenced offense must have "a statutory maximum term of imprisonment of 20 years or more." *Id.*

Courts correctly apply a base offense level of 7 for U.S.S.G. § 2S1.1 where a defendant is convicted of wire fraud as well as of laundering the proceeds of that wire fraud. For example, the First Circuit recently upheld a district court's application of a base offense level of 7 where the defendant sustained convictions for wire fraud and for laundering the resulting proceeds. *United States v. Abbas*, 165 F.4th 659, 663–66 (1st Cir. 2026), *petition for cert. filed*, No. 26-5159 (U.S. July 20, 2026). In *Abbas*, the First Circuit held that "if, (1) '*any one*' of the defendant's convictions is governed by § 2B1.1

and (2) that offense carries a maximum term of 20 or more years, then the base offense [for § 2S1.1] is seven." *Id.* at 665 (citation modified) (emphasis in original) (quoting *United States v. Otunyo*, 63 F.4th 948, 957 (D.C. Cir. 2023)). In other words, where a defendant is convicted of a fraud offense and of laundering that offense's proceeds, the Guidelines direct sentencing courts to determine the offense level for § 2S1.1 by analyzing "the *underlying offense* that produced the laundered money and whether *that offense* is 'referenced to' USSG § 2B1.1." *Id.* (emphasis in original); *see Otunyo*, 63 F.4th at 956–57 (applying base offense level of 7 for laundering bank fraud proceeds because "[t]he text [of U.S.S.G. § 2B1.1] does not say 'the' offense of conviction, . . . [i]t says 'an' offense of conviction").

A base offense level of 6 for § 2S1.1 only applies where a defendant is convicted of money laundering by itself (*i.e.*, without also being convicted of the underlying offense from which the laundered funds were derived). *See Abbas*, 165 F.4th at 665. So, since the defendant in *Abbas* was convicted of wire fraud and money laundering and wire fraud is referenced to § 2B1.1, the First Circuit correctly applied these principles and rejected the defendant's contention that his money laundering base offense level should have been 6. *Id.*

**C. <u>Argument</u>**

The exact same is true here as in *Abbas*, which means the Court should sustain the government's objection to the PSR's calculation of Loloee's applicable offense level.

1. <u>The Guidelines' text and purpose reveal that Loloee's base offense level for his money laundering conviction should be 7.</u>

Loloee pleaded guilty to wire fraud as well as to laundering the proceeds of that wire fraud. PSR ¶ 1. He was therefore "convicted of an offense referenced to" U.S.S.G. § 2B1.1 because wire fraud appears in the statutory index of Appendix A for § 2B1.1. *See Abbas*, 165 F.4th at 665; U.S.S.G. app. A. And it is undisputed that the Court could sentence Loloee to up to twenty years in prison for his wire fraud conviction. *See* PSR ¶ 155. Hence, a straightforward reading of the Guidelines reveals that Loloee's base offense level for his money laundering conviction should be 7 because his "wire-fraud conviction meets both musts" of § 2B1.1(a)(1): It must be referenced to § 2B1.1 and it must carry a maximum penalty of at least twenty years in prison. *Abbas*, 165 F.4th at 665. Since both of these "musts" are true for Loloee's underlying wire fraud conviction, the base offense level for his related

money laundering conviction should be 7. *Id.*; *see United States v. Capps*, 977 F.3d 250, 255 (3d Cir. 2020) (applying base offense level of 7 for money laundering offense deriving from mail fraud).

Furthermore, sustaining the government's objection will further the Guidelines' purpose of promoting enhanced punishment for criminals who launder the proceeds of their own offenses (sometimes referred to as "direct money launderers"). *See United States v. Menendez*, 600 F.3d 263, 268 (2d Cir. 2010) (reasoning that "the express purpose of section 2S1.1(a) [is] to punish direct money launderers one to four levels greater than the Chapter Two offense level for the underlying offense" (internal quotation marks omitted)); *United States v. Descent*, 292 F.3d 703, 709 (11th Cir. 2002) (stating that 2001 amendment of § 2S1.1 was "designed to promote proportionality by providing for increased penalties for defendants who launder funds derived from more serious underlying criminal conduct"). The PSR itself correctly calculates that the base offense level is 7 for Loloee's wire fraud conviction in Count 53 of the superseding indictment. PSR ¶ 93. Hence, it would undermine the Guidelines' purpose for Loloee's money laundering offense calculation to start from a lower level (*i.e.*, 6) than that assigned to his conviction for first obtaining millions of dollars he then laundered (*i.e.*, 7). *See Menendez*, 600 F.3d at 268.

2. <u>Loloee's anticipated arguments in support of a base offense level of 6 would be meritless.</u>

The government anticipates that Loloee could echo similarly unconvincing arguments against this natural reading of the Guidelines as the defendant in *Abbas* raised. *Abbas*, 165 F.4th at 664–66.

For example, Loloee might assert that the relevant "offense" under U.S.S.G. § 2B1.1(a)(1) is his money laundering conviction, which is specifically referenced to § 2S1.1 but not to § 2B1.1. U.S.S.G. §§ 2B1.1, 2S1.1, app. A. The Court should reject such a position because the Guidelines require only that "the defendant was convicted of *an* offense referenced to this guideline," not that the defendant was convicted of a particular crime. U.S.S.G. § 2B1.1(a)(1) (emphasis added). Loloee "was convicted of *an* offense referenced to" U.S.S.G. § 2B1.1 because he pleaded guilty to wire fraud—an offense that Appendix A undeniably references to § 2B1.1. *Id.* (emphasis added); *see Otunyo*, 63 F.4th at 956–57; *see also* PSR ¶ 1.

///

Relatedly, Loloee might assert that other authorities cut against the government's objection. *See Abbas*, 165 F.4th at 165–66 (referencing, among other things, *United States v. Klassy*, 409 F. App'x 169 (9th Cir. 2011), as well as 2018 guidance document issued by United States Sentencing Commission). If presented with this or a similar argument by Loloee, the Court should reject it. These authorities do not address the instant situation where a defendant stands convicted of a money laundering count as well as a separate count for the fraud which produced the laundered funds. *Id.* Specifically, *Klassy* is inapplicable here because the defendant's underlying convictions in that case carried maximum penalties of five years. *Klassy*, 409 F. App'x at 171 (recounting Klassy's underlying convictions for violations of two subsections of 18 U.S.C. § 152). Here, of course, there is no dispute that Loloee's wire fraud conviction meets the twenty-year-penalty prong required for his base offense level to be 7. PSR ¶ 93; U.S.S.G. § 2B1.1(a)(1)(B). And as for the Sentencing Commission guidance document that the First Circuit rejected, the Court should do the same here because that document deals with a situation where the defendant "was only *involved* in a wire fraud scheme, *not* convicted like § 2B1.1(a)(1) requires." *Abbas*, 165 F.4th at 666 (internal quotation marks omitted) (emphasis in original).

### D. Conclusion

The Court should sustain the government's objection to the base offense level calculation for Loloee's money laundering conviction. The base offense level for that conviction should be 7, which means that the adjusted offense level for Loloee's conviction of Count 54 of the superseding indictment should be 27. PSR ¶¶ 100–08.

## II. ACCEPTANCE OF RESPONSIBILITY

The Court should also amend the PSR to reflect the fact that as of the date of these formal objections, Loloee has not truly accepted responsibility for his crimes. Accordingly, unless Loloee demonstrates to the Court at sentencing that he understands and acknowledges his culpability, the Court should grant the government's second objection and decline to reduce Loloee's offense level under U.S.S.G. § 3E1.1. *See* PSR ¶¶ 117–18.

### A. Factual and Procedural Background

After Loloee entered his guilty pleas, he made several statements about his criminal conduct. For example, he told a local news outlet that no undocumented individuals worked at his Viva Supermarket

stores. Ex. 1 at *2. He also suggested that his convictions stemmed not from his own personal failings or avarice, but because other people let him down and he was too busy running his businesses to notice. PSR ¶ 65. In the same vein, Loloee submitted a four-page statement to the Court recounting his personal history and claiming that this prosecution taught him an important lesson to "seek[] professional guidance when facing complex decisions." PSR at *39.

The PSR points out that Loloee downplays his own responsibility for his crimes: "It is concerning that Loloee appears to blame others, even after entering his guilty plea to numerous charges, citing his lack of oversight and professional guidance as reasons why these crimes occurred." PSR Sent'g Recommendation at 3. Nonetheless, the PSR awards Loloee a reduction in his offense level for accepting responsibility. PSR ¶¶ 117–18.

**B. <u>Legal Background</u>**

A defendant who "clearly demonstrates acceptance of responsibility for his offense" should receive a reduction in his offense level. U.S.S.G. § 3E1.1. "The defendant bears the burden of demonstrating acceptance of responsibility, and must show 'genuine contrition for his acts.'" *United States v. Rodriguez*, 851 F.3d 931, 949 (9th Cir. 2017) (citing *United States v. Osinger*, 753 F.3d 939, 948 (9th Cir. 2014)) (quoting *United States v. Dhingra*, 371 F.3d 557, 568 (9th Cir. 2004)). Hence, a defendant who "enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1 cmt. n.3.

A sentencing court may consider a range of factors bearing on acceptance of responsibility. These include whether the defendant denies criminal conduct that the sentencing court finds to be true, the extent of the defendant's post-offense rehabilitation, the timeliness of any manifestation of acceptance, and whether the defendant's post-arrest statements demonstrate contrition. U.S.S.G. § 3E1.1 cmt. n.1; *see United States v. Innie*, 7 F.3d 840, 848 (9th Cir. 1993) (upholding district court's denial of adjustment for acceptance of responsibility where defendant "refused to discuss the case with the probation officer and did not make a statement evidencing remorse at the sentencing hearing"). "The sentencing judge is given significant latitude under the Guidelines to assess the sincerity of a defendant's claim of responsibility." *United States v. Mara*, 523 F.3d 1036, 1038 (9th Cir. 2008).

///

## C. **Argument**

Loloee is not entitled to an acceptance of responsibility reduction at this point for at least two independent reasons. First, his statements—both in public and incorporated into the PSR—are at odds with genuine contrition. Second, he continues to assert that he did not and does not employ undocumented workers in his stores, which is simply false.

### 1. Loloee's statements are inconsistent with accepting responsibility.

Loloee's own words demonstrate that he believes he is not actually culpable for the conduct to which he pleaded guilty.

To hear him tell it, Loloee's convictions trace not to his own criminality, but to finding himself in situations that called for more oversight, additional professional guidance, and closer attention to significant legal and regulatory matters. *See* PSR ¶ 65. Nowhere in his statement to the probation officer does Loloee acknowledge that he did anything wrong by underpaying his undocumented workforce (thereby reducing his own payroll tax liability), threatening them and their families with deportation, stealing millions of dollars in COVID-19 relief, or obstructing federal investigations into his various activities. *See, e.g.*, PSR ¶¶ 8, 13–15, 18, 51–53. This demonstrates that Loloee is not actually or genuinely contrite, as he must do before qualifying for a reduction in his offense level for accepting responsibility. *See Rodriguez*, 851 F.3d at 949.

The same is true of his four-page letter to the Court, which Loloee presumably had as much time as he needed to reflect on and compose in pursuit of an acceptance-of-responsibility reduction. *See generally* PSR at *36–*39. His written statement details challenges Loloee overcame—laudably—early in his life. PSR at * 36–*37. It also recounts Loloee's efforts to help his employees through the years, his love for his family, and his short-lived tenure on the Sacramento City Council. PSR at *37–*38. And it mentions Loloee's "terribly painful" loss of reputation and public standing as a result of his convictions. PSR at *38–*39.[1] Notably, what Loloee's letter does not do is address the significant hardships experienced by any of the many Viva Supermarket witnesses who testified at his co-conspirator's recent trial. *See, e.g.*, PSR Sent'g Recommendation at 3 (describing how Loloee's high

[1] Loloee appears unable to acknowledge that he is actually convicted of multiple felonies, so he re-styles those convictions as "this case," "these proceedings," or "this experience." PSR at *38–*39.

opinion of himself "directly conflicts with evidence that he took advantage of his employees' lack of immigration status and threatened them with deportation, causing them to work under unfair and illegal work conditions and to live in fear"). Nor does the statement grapple with Loloee's many lies to federal wage and hour investigators who were trying to uncover how many millions of dollars in unpaid overtime he owed these same employees. *See, e.g.*, PSR ¶¶ 12–14. And it certainly references no regret Loloee might feel for deceiving the United States Small Business Administration in pursuit of more than $2 million meant to alleviate the effects of the COVID-19 pandemic. PSR ¶¶ 51–53.

The Court can and should conclude from the notable absence of any remorse in Loloee's own statements that he fails to carry his burden to demonstrate "genuine contrition" for his crimes. *See Rodriguez*, 851 F.3d at 949.

2. Loloee continues to deny employing undocumented workers.

As demonstrated during the recent trial of his co-conspirator Karla Montoya, Loloee's post-plea assertions that Viva Supermarket employs only documented workers is flatly false. *See* Ex. 1 at *2. For as the Court is well aware, numerous witnesses—including some called by Montoya during her defense case—testified that they still work at Viva Supermarket despite not having legal authorization to do so. *See, e.g.*, PSR ¶¶ 37–39. This means that Loloee does not merit an acceptance of responsibility adjustment, because he is not "truthfully admitting the conduct comprising the offense(s) of conviction." U.S.S.G. § 3E1.1 cmt. n.1.

Additionally, comparing Loloee's assertion that he never employed undocumented people with contrasting trial testimony underscores the limited extent of his post-offense rehabilitation. *Compare* Ex. 1 at *2 ("In an interview after his hearing Thursday, [Loloee] defended the labor practices at his stores and said he does not employ undocumented workers."), *with* PSR ¶¶ 37–39 (describing Loloee's past and ongoing employment of undocumented individuals). Since post-offense rehabilitation is one of the factors the Court may consider in determining whether Loloee qualifies for an acceptance-of-responsibility adjustment, his false denials that he employs people in violation of federal law fatally undermines the basis for any such reduction. *See* U.S.S.G. § 3E1.1 cmt. n.1.

///

///

## III. CONCLUSION

The Court should sustain the government's objection to the PSR's offense level calculation for Loloee's money laundering offense. It should also sustain the government's separate objection to the PSR's reduction of Loloee's offense level for accepting responsibility.

Accordingly, Loloee's adjusted offense level should be 27 instead of 23. *See* PSR ¶ 120.

Dated: November 5, 2026

ERIC GRANT
United States Attorney

By: /s/ SAM STEFANKI
AUDREY B. HEMESATH
MATTHEW THUESEN
SAM STEFANKI
Assistant United States Attorneys